**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

KENYETTA S.,[1]          )
                      )
    *Plaintiff,*        )
                      )
       v.           )     Civil No. 3:23-cv-70-SLS
                      )
MARTIN O'MALLEY,     )
Commissioner of the        )
Social Security Administration,[2]  )
                      )
    *Defendant.*      )
                      )

## <u>MEMORANDUM OPINION</u>

In this action, Plaintiff Kenyetta S. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court on Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 15) and the Commissioner's Motion for Summary Judgment and Brief in Support Thereof ("Def's Mem.") (ECF No. 17). The motions have been fully briefed, rendering this matter ripe for disposition. (ECF Nos. 15, 16, 17.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 3, 22, 23).

Plaintiff requests that the Commissioner's decision be reversed and remanded with instructions to grant disability benefits. (Plaintiff's Memorandum Supporting Her Motion for

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

Summary Judgment ("Pl's Mem.") (ECF No. 16), at 13.)  As the basis for such relief, Plaintiff contends that the Administrative Law Judge ("ALJ") erred by not finding Plaintiff's unsteady gait, urinary incontinence, and cognitive impairments to be severe impairments at step two and by failing to include adequate restrictions for these impairments in the residual functional capacity ("RFC") assessment.  (Pl.'s Mem. at 1-2, 10-13.)  In response, the Commissioner argues that the ALJ's findings both at step two and in the subsequent RFC are supported by substantial evidence and should be affirmed.  (Def.'s Mem. at 11-16.)  The Commissioner also contends that, in any event, any alleged error would be harmless.  (Def.'s Mem. at 13, 15-16.)

For the reasons set forth below, the ALJ's conclusions both at step two and in the RFC assessment find substantial support in the evidence.  Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 15), GRANT Defendant's Motion for Summary Judgment (ECF No. 17), and AFFIRM the final decision of the Commissioner.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 27, 2020, alleging disability beginning on June 29, 2020.  (Administrative Record ("R.") at 80, 185, 200.)[3]  In her application, Plaintiff alleged that she suffered from a "mental disability."  (R. at 200.)  The SSA denied Plaintiff's claim initially and again upon reconsideration.  (R. at 94-100, 107-11.)  Plaintiff requested a hearing before an ALJ, and one was held on July 19, 2022.  (R. at 36-65, 117-18.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

On July 29, 2022, the ALJ issued a written decision, holding that Plaintiff was not disabled under the Social Security Act ("the Act") from the alleged onset date to the date of decision. (R. at 15-28.) On December 23, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the

ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude him or her from performing his or her past relevant work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the

Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 15-28.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 29, 2020 (the alleged onset date). (R. at 17.)

At step two, the ALJ found that Plaintiff suffers from the severe impairments of epilepsy, insomnia, obesity, depression and bipolar disorders, and adjustment disorder. (R. at 17.) In so finding, the ALJ determined that those medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities. (R. at 17.)

The ALJ recognized other impairments and other "symptoms or complaints that appear periodically throughout the record," including urinary incontinence, migraines, hypertension, hyperlipidemia, hypothyroidism, diabetes mellitus, gastroesophageal reflux disease ("GERD"), and hand tremors, but found those to be non-severe.  (R. at 18.)  Although Plaintiff received continued treatment for hypertension, hyperlipidemia, hypothyroidism, diabetes, GERD, and migraines, medical records showed that such conditions "were stable or controlled on medication" and examinations showed normal findings.  (R. at 18.)  Although Plaintiff reported tremors in late 2019, the record showed such tremors had improved without continued diagnoses or treatment for the same, and that such tremors occurred about once a month in mid-2021 with improvement.  (R. at 18.)  "Finally, [Plaintiff] denied urinary frequency or incontinence through 2020.  In mid-2021, she reported wearing [Depends adult incontinence underwear] and her treating provider prescribed the same with no abnormal findings upon examination.  The record contains little to no further treatment or any objective findings regarding the same."  (R. at 18 (internal record citations omitted).)  As for all of these, the ALJ concluded: "These impairments, considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment, have not met the 12-month-durational requirement, or are otherwise not adequately supported by the medical evidence in the record."  (R. at 18.)  The ALJ categorized them as non-severe because those "impairments do not have more than a minimal effect on [Plaintiff's] ability to do basic work activities."  (R. at 18.)

At step three, the ALJ determined that through the date of last insured, Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18-20.)  The ALJ found that Plaintiff's physical impairments of epilepsy, insomnia, and obesity did not equal a listing alone or in combination

because Plaintiff had not had a seizure since 2018 and presented no medical opinion to support a finding that her insomnia medically equaled any listing.  (R. at 19.)

In considering the severity of Plaintiff's mental impairments of depression, bipolar disorder, and adjustment disorder, the ALJ found among other things that those impairments, considered alone and in combination, did not meet or medically equal the requirements of Listings 12.04 and 12.06 because Plaintiff did not satisfy the "paragraph B" criteria.  (R. at 19.)  "To satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning," with an extreme limitation indicating "the inability to function independently, appropriately, or effectively, and on a sustained basis" and a marked limitation showing a "seriously limited ability" to do the same.  (R. at 19.)  The ALJ found moderate limitations in the areas of mental functioning, including (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself.  (R. at 19-20.)  In so finding, the ALJ acknowledged that Plaintiff reported difficulties with her memory, understanding, and concentration as well as her ability to interact with others and handle stress or changes in routine and that the record contained "some findings of a tearful presentation and some continued reports" of memory trouble, isolation, concentration trouble, and depressed moods.  (R. at 19-20.)  But the ALJ also found that most examinations revealed a normal memory, intact judgment, intact insight, cooperative presentation, improved thought processes, normal concentration, normal attention, and normal mood and affect with good grooming and that Plaintiff acknowledged being able to write in her journals, go shopping with others, live with others, and watch television.  (R. at 19-20.)  The ALJ found that the record supported moderate, not marked or extreme, limitations in these areas of mental functioning.  (R. at 19-20.)

The ALJ then conducted Plaintiff's RFC assessment.  (R. at 20-26.)  Importantly, the ALJ "considered *all* of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's RFC]."  (R. at 18 (emphasis added).)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), except:

> [Plaintiff] can frequently stoop; occasionally kneel, crouch, crawl, and climb ramps and stairs; never balance or climb ladders, ropes, and scaffolds; can have no exposure to heights or hazards; can understand, remember, apply, and carry out simple, routine, repetitive tasks for two hours at a time with normal breaks; concentrate, persist, and maintain pace to complete tasks that do not require production rate pace, meaning fast pace; can have occasional contact with coworkers but no contact with the public; can work in settings where tasks involve work primarily with objects rather than people; and can adapt to occasional changes.

(R. at 20.) The ALJ determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (R. at 21.)

Plaintiff reported having a mental disability and receiving continued treatment for epilepsy and insomnia.  (R. at 21.)  At the hearing, Plaintiff stated she used a cane and a walker and had issues lifting, squatting, bending, standing, walking, kneeling, and climbing stairs.  (R. at 21 (internal record citations omitted).)  She also reported "depression and anxiety, with hallucinations, nightmares, and lack of energy" and "trouble with her memory, concentration, understanding, interactions with others, and handling stress or changes."  (R. at 21 (internal record citations omitted).)  Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the[se] alleged symptoms," the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 21.)

In determining how Plaintiff's symptoms limit the ability to perform work-related activities, the ALJ noted that although Plaintiff had a history of treatment for epilepsy, she had not had a seizure since 2018, years before the alleged disability onset date.  (R. at 21, 23.)  In addition, although Plaintiff continued treatment for insomnia, during the relevant period, providers reported Plaintiff's sleep had improved with medication treatment.  (R. at 21, 23.)  As for exertional limitations, Plaintiff reported trouble walking in late 2021 and underwent physical therapy.  (R. at 21.)  While the physical therapist noted "some gait difficulties," the therapist identified "no specific impairment that caused the same."  (R. at 21.)  In addition, although Plaintiff reported cane and walker use, she did not present to examinations with such devices, and examinations revealed full strength in the extremities, normal gait, and no abnormal movements.  (R. at 21, 23.)  Plaintiff also reported "improvement with her balance complaints after a reduction" in medication in late 2020.  (R. at 22.)  The ALJ found Plaintiff's obesity exacerbates her other severe impairments.  (R. at 22.)

In considering limitations stemming from Plaintiff's mental impairments, the ALJ discussed the following:

- A 2019 hospitalization for suicidal ideation and depression prior to the disability period at issue, followed by a late 2019 examination "reveal[ing] a well-kept and cooperative presentation, average intelligence, a euthymic mood, and improving thought processes but a constricted affect and delayed speech[;]"

- "Examinations in the first half of 2020 reveal[ing] a normal mood and affect, normal behavior, a normal memory, improved thought processes, average intelligence, intact judgment and insight, good grooming, and a cooperative presentation with a few sad and tearful moods and affects[;]"

- Mid-2020 reports of "trouble processing, remembering, and understanding" with examinations showing "a sad affect but normal mood, improved thought processes, intact judgment and insight, average intelligence, and cooperative presentation[;]"

- "Examinations in the second half of 2020 continued to reveal normal psychological findings, normal memory, normal concentration, and reports of improved symptoms but some depressed and tearful presentations[;]"

- A late 2020 report of "a stable mood, engagement in social activities, improved focus and motivation," followed by a late 2020 presentation after self-harming during which Plaintiff denied suicidal ideation, but examinations showed superficial lacerations on her foot and noted normal attention, memory, behavior, thought content, mood, and affect;

- Throughout 2021, Plaintiff's treatment provider noted that Plaintiff's symptoms were improving, and examinations showed intact judgment and insight, pleasant or normal moods and affects, normal memory and concentration, and normal thought processes with some presentations of depression and tearfulness; and

- Beginning in December 2021 and continuing into 2022, Plaintiff's provider reported "worsening" symptoms although records show a depressed mood and tearfulness with otherwise normal psychological findings, including improved thought processes, intact judgment and insight, normal moods and affects, average intelligence, and cooperative presentations.

(R. at 22 (internal record citations omitted).)  Overall, the ALJ determined that the examinations revealed "improved thought processes, normal memory and concentration, intact judgment and insight, good grooming, and normal moods and affects, with some reports of depressed moods and tearfulness."  (R. at 23.)  In addition, Plaintiff testified at the hearing that she could watch television, write in her notebooks, live with others, and go shopping with her parents.  (R. at 23.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  (R. at 21.)  As relevant here, non-examining State agency medical consultant, Jack Hutcheson, M.D., opined that Plaintiff could perform light work with some exceptions, including the occasional ability to climb ramps and stairs but never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl.  (R. at 23.)  The ALJ found this opinion persuasive, supported by Plaintiff's treatment

records, and consistent with the evidence, including "examination findings of a full strength to the extremities, normal gait, and no abnormal movements with no assistive device use." (R. at 23.)

"An unknown physical therapist reported mild to severe impairments in [Plaintiff's] gait functions in late 2021." (R. at 24.) The ALJ found this opinion unpersuasive because it was not supported by examination findings from the same year showing a "normal gait, five out of five strength, and normal musculoskeletal findings" and not consistent with the limited treatment for any gait problems. (R. at 24.)

The ALJ found an opinion by Leslie Montgomery, Ph.D., partially persuasive. (R. at 24.) Dr. Montgomery opined that Plaintiff had moderate limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, and maintaining pace; and mild limitations in adapting or managing oneself. (R. at 24.) While the ALJ found Dr. Montgomery's opinion persuasive to the extent she found Plaintiff had moderate limitations, the ALJ determined that Plaintiff also had moderate limitations, not mild limitations, in adapting and managing oneself based on some examination findings of depressed moods and tearful presentations as well as hearing testimony. (R. at 24.) Importantly, Dr. Montgomery opined, among other things, that Plaintiff could remember work like procedures and simple instructions, make simple decisions and carry out short and simple instructions, and maintain attention for up to two-hour periods. (R. at 24.) The ALJ found those opinions persuasive. (R. at 24.)

The ALJ found an opinion from Richard Milan, Ph.D., partially persuasive. (R. at 25.) Dr. Milan found a moderate limitation in concentrating, persisting, and maintaining pace, which the ALJ found persuasive. (R. at 25.) Dr. Milan opined that Plaintiff had only mild limitations in all

other areas of mental functioning, which the ALJ found unpersuasive, finding instead moderate limitations. (R. at 25.)

Lastly, the ALJ found the opinion of treating provider Emily Torres, Family Nurse Practitioner, unpersuasive. (R. at 25.) In early 2021, Ms. Torres reported Plaintiff "had up to extreme limitations in sustained concentration and persistence; up to moderate limitations in social interaction; and up to one extreme and three marked limitations in adaption." (R. at 25 (internal record citations omitted).) Although Mr. Torres acknowledged that Plaintiff's "overall functioning had improved," she opined that Plaintiff "was severely limited in daily functioning with risk of relapse." (R. at 25.) In July 2022, Ms. Torres submitted another report indicating that Plaintiff "had up to extreme limitations in sustained concentration and persistence; up to marked limitations in social interaction; and up to one extreme, two marked, and one moderate limitation in adaption." (R. at 25 (internal record citations omitted).) The ALJ found Ms. Torres's conclusions unsupported by her own examination findings that showed "improved thought processes, normal memory and concentration, intact judgment and insight, good grooming, and normal moods and affects, with some reports of depressed moods and tearfulness." (R. at 25 (internal record citations omitted).) In addition, the ALJ found Ms. Torres's opinion inconsistent with Dr. Montgomery's opinion as well as Plaintiff's reported activities of daily living. (R. at 25.)

After considering Plaintiff's impairments and resulting symptoms and limitations, the ALJ concluded:

> Given this evidence, taking [Plaintiff's] testimony of continued fatigue with the greatest benefit of the doubt, taking her obesity and insomnia in combination, and in an effort to prevent any exacerbations or accidents due to her epilepsy and insomnia, the undersigned finds [Plaintiff] can perform light work, except she can frequently stoop; occasionally kneel, crouch, crawl, and climb ramps and stairs; never balance or climb ladders, ropes, and scaffolds; and can have no exposure to heights or hazards. Given the continued treatment for her psychological impairments, giving her testimony of continued widespread difficulties the greatest

benefit of the doubt, taking the few findings of abnormal moods and affects with a tearful presentation in to account, and in an effort to prevent any exacerbations of her depression or anxiety, the undersigned finds [Plaintiff] can understand, remember, apply, and carry out simple, routine, repetitive tasks for two hours at a time with normal breaks; concentrate, persist, and maintain pace to complete tasks that do not require production rate pace, meaning fast pace; can have occasional contact with coworkers but no contact with the public; can work in settings where tasks involve work primarily with objects rather than people; and can adapt to occasional changes.

(R. at 23.)

At step four, the ALJ found Plaintiff could not perform her past relevant work as a preschool teacher. (R. at 26.) As for vocational factors, the ALJ determined Plaintiff has at least a high school education, was a younger individual on the alleged disability onset date, and subsequently changed age category to an individual closely approaching advanced age. (R. at 26.)

At step five, the ALJ concluded, based on the VE's testimony, that Plaintiff could perform jobs that exist in significant numbers in the national economy considering her age, education, work experience, and RFC. (R. at 26-27.) The ALJ adopted the VE's testimony that Plaintiff could perform the jobs of merchandise marker, router, and order caller and found Plaintiff not disabled from June 29, 2020 through July 29, 2022. (R. at 27.)

## IV.   ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's

decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).  The Court considers Plaintiff's assignments of error with this standard of review in mind.

### A.  The ALJ Applied Correct Legal Standards in Determining Plaintiff's Severe Impairments, and Substantial Evidence Supports the ALJ's Findings

Plaintiff first contends that the ALJ erred by failing to find her "unsteady gait, urinary incontinence, and cognitive impairment[s]" severe at step two.  (Pl. Mem. at 1-2, 10.)  The Commissioner counters that the ALJ did not err because: (1) an unsteady gait is not an impairment, but rather a symptom of an impairment which the ALJ accounted for in considering Plaintiff's epilepsy; (2) the ALJ correctly found Plaintiff's urinary incontinence did not cause additional work limitations; and (3) the ALJ fully considered Plaintiff's mental impairments, specifically Plaintiff's depression, bipolar, and adjustment disorders, and considered resulting cognitive limitations. (Def.'s Mem. at 11-15.)  Because the ALJ's findings at step two are supported by substantial evidence and because the ALJ applied correct legal standards, the Court finds no reversible error.

#### 1. Applicable Step Two Legal Standards

At step two, the ALJ must determine whether the claimant's medical impairments meet the regulations' severity and duration requirements.  20 C.F.R. § 404.1520(a)(4)(ii).  To meet the durational requirement, an impairment must have or be expected to last for a continuous period of at least twelve months.  *Id.* § 404.1509.  An impairment is considered "severe" if it significantly limits the claimant's mental or physical ability to perform basic work activities.  *Id.* § 404.1522(a). On the other hand, an impairment is not severe if it "has no more than a minimal effect on an individual's physical and mental ability(ies) to perform basic work activities."  SSR 85-28, 1985 WL 56856, at *3 (1985).  Those activities cover "the abilities and aptitudes necessary to do most

14

jobs." 20 C.F.R. § 404.1522(b); *see* SSR 85-28, at *4.   Examples include walking, standing,

sitting, lifting, pushing, or pulling; seeing, hearing, speaking; understanding, carrying out, or

remembering simple instructions; using judgment; responding appropriately to situations

involving other individuals in the workplace; and adapting to changes in the work setting.   20

C.F.R. § 404.1522(b)(1)-(6).   It is the claimant's burden to demonstrate the severity of an

impairment. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

> 2.   *The ALJ Reasonably Considered Plaintiff's Alleged Unsteady Gait as a Symptom*
>      *Rather Than an Impairment*

Plaintiff contends that portions of the medical record support findings of balance issues

and an unsteady gait and that the ALJ erred in not finding this to be a severe impairment.   (Pl.'s

Mem. 2-4, 11.)   But as the Commissioner argues, the record here supports the ALJ's finding that

an unsteady gait constitutes not a severe impairment, but rather a "symptom" of an impairment.

Plaintiff concedes that her own neurologist "suspected that [Plaintiff's] unsteady gait could

be due to her medication, which has a known side effect of ataxia."   (Pl.'s Mem. at 3.)   Moreover,

at the hearing, Plaintiff testified that she experienced balancing issues due to her medication and

dizziness due to seizures.   (R. at 46-48.)   While the ALJ determined Plaintiff's epilepsy to be a

severe impairment, she analyzed Plaintiff's unsteady gait as a symptom, rather than a specific

impairment.   (R. at 17, 21.)

Given her own testimony and the record evidence, Plaintiff has not met her burden of

demonstrating that she suffered from a severe impairment of gait unsteadiness.   The ALJ

reasonably considered unsteady gait in her analysis of symptoms under the RFC assessment, rather

than as a severe impairment. *See, e.g.*, *Wedwick v. Colvin*, No. 2:14-cv-267, 2015 WL 4744389,

at *8 (E.D. Va. Aug. 7, 2015) (considering unsteady gait as a reported symptom); *Mathias v.*

*Berryhill*, No. 1:17-cv-92, 2018 WL 4677856, at *3 (N.D. W. Va. July 3, 2018), *report and*

*recommendation adopted*, 2018 WL 3458489 (N.D. W. Va. July 18, 2018) (noting improved symptoms, including in gait unsteadiness and dizziness).

### 3. *Substantial Evidence Supports the ALJ's Finding that Plaintiff's Urinary Incontinence Did Not Constitute a Severe Impairment*

Plaintiff next asserts that the ALJ ignored a "plethora of medical records" establishing her urinary incontinence. (Pl.'s Mem. at 12.) Plaintiff further contends that her use of urinary incontinence "pads has more than a minimal effect on her ability to perform activities of daily living and work." (Pl.'s Mem. at 12.) Review of the ALJ's decision shows otherwise.

The ALJ considered and cited medical evidence regarding Plaintiff urinary frequency and incontinence. (R. at 18.) The ALJ noted that Plaintiff "denied urinary frequency or incontinence throughout 2020. In mid-2021, she reported wearing depends and her treating provider prescribed the same with no abnormal findings upon examination. The record contains little to no further treatment or any objective findings regarding the same." (R. at 18 (internal record citations omitted).)

The records cited by Plaintiff were either specifically identified by the ALJ in making her determinations or include the same information as that already considered by the ALJ. For example, Plaintiff cites to a 2019 record indicating that Plaintiff reported "urinary loss of control but . . . no difficulty urinating, no hematuria [blood in urine], and no increased frequency." (Pl.'s Mem. at 12 (citing R. at 2800).) As another example, Plaintiff cites records from 2021 through 2022 indicating that Plaintiff wears incontinence underwear all day and night because of lack of control and directing her to continue using pads as needed. (Pl.'s Mem. at 12 (citing R. at 2389, 2391, 2622, 2629, 2636, 2643, 2648, 2650).) Finally, Plaintiff cites a 2022 record listing urinary incontinence as a side effect of Plaintiff's medications and epilepsy. (Pl.'s Mem. at 12 (citing R. at 2615).)

The ALJ fully considered this record evidence and reasonably concluded that Plaintiff's urinary incontinence "caused only transient and mild symptoms and limitations," was "well controlled with treatment," or was otherwise "not adequately supported by the medical evidence in the record." (R. at 18.) The ALJ applied the correct legal standards in assessing its severity, and substantial evidence supports her finding at step two that Plaintiff's urinary incontinence did not constitute a severe impairment from June 29, 2020 (the alleged disability onset date) to July 29, 2022 (the date of the ALJ's decision).

### 4. The ALJ Did Not Err in Failing to Recognize a Severe Cognitive Impairment

Plaintiff also asserts that the ALJ failed to find that Plaintiff suffered from a severe cognitive impairment which caused problems with comprehension, concentration, focus, and memory. (Pl.'s Mem. at 12.) A review of the decision, however, shows that the ALJ fully considered Plaintiff's mental impairments at step two, including finding that Plaintiff's depression, bipolar disorder, and adjustment disorder were severe impairments. (R. at 17.) The ALJ then considered symptoms caused by those impairments at step three and in connection with the RFC assessment, including limitations as to Plaintiff's ability to understand, remember, or apply information and concentrate, persist, or maintain pace. (R. at 19-25.) The record contains substantial evidence supporting this finding at step two.

In her application, Plaintiff alleged that she suffered from a "mental disability." (R. at 200.) In a Function Report, Plaintiff stated that her "severe depression, anxiety, bipolar II and PTSD along with [her] medication cause" symptoms, including inability "to remember and stay focused." (R. at 247.) Plaintiff's treating provider, Ms. Torres, listed Plaintiff's conditions as bipolar II, depression, insomnia, and generalized anxiety disorder. (R. at 2654.) At the hearing, Plaintiff identified her mental impairments as PTSD, bipolar, and depression. (R. at 42.) Plaintiff

testified as to memory issues when asked about symptoms related to her impairments or side effects of her medications.  (R. at 44-46.)  Thus, substantial evidence supports both the ALJ's determination at step two that Plaintiff's severe impairments included depression, bipolar disorder, and adjustment disorder and the ALJ's decision to consider limitations on Plaintiff's memory, understanding, concentration, and focus during subsequent steps.

     *5.  Even If the ALJ Had Erred at Step Two, Such Error Would Be Harmless*

     Even if the ALJ had erred in failing to find unsteady gait, urinary incontinence, or cognitive issues as severe impairments, such error would be harmless.  In considering whether an error is harmless, the Court looks to "the likelihood that the result would have been different" had the ALJ not erred.  *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009)).  The burden of establishing a harmful error "rests on the party attacking the agency's determination."  *Shinseki*, 556 U.S. at 409.

     Here, the ALJ "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity."  (R. at 18.)  Therefore, even if the ALJ erred in characterizing Plaintiff's unsteady gait, urinary incontinence, and cognitive impairments as non-severe or symptoms of impairments, the ALJ considered them at subsequent steps of the sequential analysis as discussed below.  *See infra* Part IV.B.  Therefore, Plaintiff has not met her burden of showing that any such error affected the ultimate disability finding.  *See, e.g.*, *Mary R. v. Saul*, No. 3:19-cv-903, 2021 WL 388463, at *4 (E.D. Va. Jan. 19, 2021), *report and recommendation adopted*, 2021 WL 377191 (E.D. Va. Feb. 3, 2021) ("In this context, even if the ALJ erred by not discussing Plaintiff's knee impairment, the error was harmless and does not require remand.  The ALJ here found at least one severe impairment at step two, continued her analysis, and considered the limiting effects of Plaintiff's

knee condition in subsequent steps of the sequential evaluation."); *Leith v. Berryhill*, No. 1:16-cv-01565, 2017 WL 6628915, at *8 (E.D. Va. Dec. 28, 2017) ("Even if the ALJ erroneously did not categorize additional impairments as severe, the effect was harmless.  The effect was harmless because the ALJ determined Plaintiff had severe impairments at step two then considered the impairments' effects at other steps of the evaluation process."); *Christian v. Colvin*, No. 4:15-cv-41, 2016 WL 4056210, at *9 (E.D. Va. May 6, 2016), *report and recommendation adopted*, 2016 WL 3982311 (E.D. Va. July 22, 2016) ("[A] step two error is harmless if the ALJ proceeded to the next step and considered all of the claimant's impairments . . . when assessing her RFC.").[4]

## B. The ALJ Applied Correct Legal Standards in Conducting the RFC Assessment, and Substantial Evidence Supports the ALJ's RFC Findings

Plaintiff argues that because the ALJ failed to find Plaintiff's unsteady gait, urinary incontinence, and cognitive impairments to be severe, she also "failed to include adequate restrictions for these impairments in the RFC assessment." (Pl.'s Mem. at 2.)  As described above, the ALJ provided a thorough analysis of Plaintiff's testimony, medical records, medical opinions, and other evidence in arriving at the RFC finding.  Because substantial evidence supports the RFC determination, the Court finds no error.

Regarding her unsteady gait, Plaintiff contends that the ALJ erred by failing to include limitations in the RFC regarding use of an assistive device (cane or walker) and regarding

---

[4] The cases cited by Plaintiff to support her assertion that failing to make a proper determination at step two constitutes reversible error are distinguishable.  In *Albert v. Astrue*, the court ordered remand where it was "evident that the ALJ did not properly evaluate Plaintiff's foot impairment as he provided *no analysis* of the issue" and "failed to share his findings" if any.  No. CBD-10-2071, 2011 WL 3417109, at *3 (D. Md. July 29, 2011) (emphasis added).  In *Boston v. Barnhart*, "the ALJ committed reversible error by failing to explain why she did not consider obesity an impairment, severe or not severe, at step two, and failed to consider the plaintiff's obesity at the remaining steps."  332 F. Supp. 2d 879, 885 (D. Md. Aug. 12, 2004).  These cases are inapposite whereas, here, the ALJ conducted a step two analysis and considered effects and symptoms of all impairments, severe or non-severe, at subsequent steps.

Plaintiff's ability to walk or stand.  (Pl.'s Mem. at 12.)  Substantial evidence, however, supports the ALJ's decision to exclude such limitations.  As the ALJ found, even though Plaintiff reported using a cane and walker, "the record does not contain findings of the same."  (R. at 23.)  Indeed, Plaintiff testified that she used her walker only "every once in a while."  (R. at 46.)  She reported sometimes using a cane to retrieve the mail.  (R. at 49-50.)  A 2020 function report reflected occasional use of a cane, and a 2021 function report indicated no use of a cane.  (R. at 233, 253.)  Plaintiff also "did not present to examinations" with a cane or walker.  (R. at 21.)  The ALJ also reasonably determined that Plaintiff could perform light work with postural limitations (e.g., occasional kneeling, crouching, crawling, and climbing ramps and stairs and never balancing or climbing ladders, ropes, and scaffolds) but without additional limitations as to standing or walking.  While acknowledging Plaintiff's reports of trouble walking and treatment with a physical therapist, the ALJ also considered examination findings of a normal gait, full strength to the extremities, no abnormal movements, and normal musculoskeletal findings.  (R. at 21, 23-24.)  The ALJ did not err in failing to include limitations regarding cane or walker use or standing/walking restrictions.  Rather, the ALJ properly weighed the evidence presented at the hearing and in the records and reached a conclusion supported by substantial evidence and comporting with applicable legal standards.

Regarding her urinary incontinence, Plaintiff argues that the ALJ erred by failing to include in the RFC a requirement that she be near a restroom or receive time off-task for accidents.  (Pl.'s Mem. at 12.)  The ALJ reasonably considered the record evidence regarding Plaintiff's urinary incontinence.  (R. at 18.)  Medical records show that Plaintiff reported using urinary pads as needed to address urinary incontinence but at times denied experiencing urinary incontinence.  (*See, e.g.*, R. at 2283, 2289, 2304, 2314, 2396, 2391, 2409, 2452, 2456, 2460, 2613, 2621, 2622, 2629, 2636,

2643, 2650, 2969.)  At the hearing, Plaintiff testified that she suffered from urinary incontinence "[e]very day, and some days, it's twice or three times in a day."  (R. at 48.)  Because the record indicates that the prescribed pads adequately controlled Plaintiff's symptoms, the RFC restrictions set by the ALJ are reasonable and supported by substantial evidence.[5]

Lastly, Plaintiff argues that the ALJ failed to include adequate limitations regarding her "cognitive impairment" or other mental health symptoms in the RFC.  (Pl.'s Mem. at 1, 12.)  The RFC includes limitations pertaining to Plaintiff's mental limitations, including that she "can understand, remember, apply, and carry out simple, routine, repetitive tasks for two hours at a time with normal breaks; concentrate, persist, and maintain pace to complete tasks that do not require production rate pace, meaning fast pace; can have occasional contact with coworkers but no contact with the public; can work in settings where tasks involve work primarily with objects rather than people; and can adapt to occasional changes."  (R. at 20.)  Plaintiff, however, contends that the RFC should have included additional limitations to account for Plaintiff being off-task or absent from work.  (Pl.'s Mem. at 12.)  The Court finds no error.

The ALJ dedicated a substantial portion of her decision to reviewing and analyzing Plaintiff's mental impairments, resulting symptoms and limiting effects, and mental health records. (R. at 19-20, 22-25.)  While considering Plaintiff's testimony regarding her symptoms, the ALJ also considered: (1) medical evidence showing that "providers noted mostly improved symptoms during the relevant period"; (2) examinations revealing "improved thought processes, normal memory and concentration, intact judgment and insight, good grooming, and normal moods and

---

[5] Moreover, any alleged error in failing to include a restriction in the RFC regarding Plaintiff's proximity to a restroom would be harmless.  The ALJ asked the VE if the three jobs identified would still be available to a hypothetical individual who also needed to work in proximity to an accessible restroom.  (R. at 59.)  The VE confirmed that all three jobs would still be available in the same numbers.  (R. at 60.)

affects, with some reports of depressed moods and tearfulness"; (3) Plaintiff's activities of daily living, including her ability to watch television, write in her notebooks, live with others, and go shopping; and (4) various medical opinions pertaining to Plaintiff's cognitive limitations. (R. at 23 (internal record citations omitted).) In doing so, the ALJ reasonably accounted for Plaintiff's mental impairments in her RFC findings. Because the ALJ applied correct legal standards and her RFC findings are supported by substantial evidence, the Court declines to reweigh the evidence presented and analyzed by the ALJ. *Hancock*, 667 F.3d at 472.

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 15), GRANT Defendant's Motion for Summary Judgment (ECF No. 17), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 27, 2024